1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     Stacy Monahan (Bar No. 218942)
2  50 California Street, 22nd Floor
   San Francisco, California 94111
3  Telephone: (415) 875-6600
   Facsimile: (415) 875-6700
4  Email: stacymonahan@quinnemanuel.com

5    Steven G. Madison (Bar No. 101006)
     J.D. Horton (Bar No. 192836)
6  865 S. Figueroa St., 10th Floor
   Los Angeles, California 90017
7  Telephone: (213) 443-3000
   Facsimile: (213) 443-3100
8  Email: stevemadison@quinnemanuel.com

9  Attorneys for Defendants
   California Physicians' Service dba Blue Shield
10 of California and Blue Shield of California
   Life & Health Insurance Company

11

12                 UNITED STATES DISTRICT COURT

13              NORTHERN DISTRICT OF CALIFORNIA

14

15 RICHARD B. FOX, M.D.,                  CASE NO. CV 07-2502

16            Plaintiff.
                                          BLUE SHIELD DEFENDANTS'
17      v.                                NOTICE OF MOTION AND MOTION
                                          TO DISMISS COMPLAINT;
18 BLUE SHIELD OF CALIFORNIA
   LIFE & HEALTH INSURANCE               MEMORANDUM OF POINTS AND
19 COMPANY, DEVIN GOOD, SHEILA           AUTHORITIES; and
   SABATINO, and REYNALDO
20 CASTILLO,                              DECLARATION OF STACY
                                          MONAHAN
21            Defendants.
                                          Hearing Date: June 15, 2007
22                                        Hearing Time: 9:30 a.m.
                                          Ctrm: A--15th Floor
23                                        Magistrate Judge: Hon. Joseph C. Spero
24
                                          Filing Date: May 9, 2007
25
                                          Trial Date: None Set
26

27

28

1  TO PLAINTIFF AND HIS ATTORNEYS OF RECORD:

2        PLEASE TAKE NOTICE that the motion of defendant California

3  Physicians' Service dba Blue Shield of California ("Blue Shield") and Blue Shield

4  Life and Health Insurance ("Blue Shield Life") to dismiss the Complaint filed by

5  plaintiff Ricahrd B. Fox, M.D. ("Plaintiff") in its entirety pursuant to *Fed. R. Civ. P.*

6  12(b)(6), shall be heard on June 15, 2007, at 9:30 a.m., or as soon thereafter as the

7  matter may be heard, in Courtroom A, 15th Floor, of the United States District

8  Court for the Northern District of California, located at 450 Golden Gate Avenue,

9  San Francisco, California.

10        This motion is made on the following grounds:

11      Plaintiff's claim under *Cal. Penal Code* § 484(a) fails because no civil

12      cause of exists under this statute and, even if one did, plaintiff fails to

13      plead that Blue Shield/Blue Shield Life "aided and abetted" any

14      violation.

15      Plaintiff's claim under *Cal. Penal Code* § 550(a)(6) fails because no

16      civil cause of exists under this statute and, even if one did, plaintiff fails

17      to plead that Blue Shield/Blue Shield Life "aided and abetted" any

18      violation.

19      Plaintiff's claim under *Cal. Bus. & Prof. Code* §§ 17000 *et seq.* fails

20      because fails to allege facts sufficient to establish liability under this

21      statute.

22      Plaintiff's unjust enrichment claim is preempted by ERISA.

23

24

25

26

27

28

1        This motion is based on this Notice of Motion and Motion, the

2   Memorandum of Points and Authorities in support thereof, the concurrently filed

3   Declaration of Stacy Monahan all matters of which the Court may take judicial

4   notice, the pleadings and other papers on file in this action and such further evidence

5   and argument as may be presented at or before the hearing on this motion.

6   DATED:  May 16, 2007          QUINN EMANUEL URQUHART OLIVER &
                                   HEDGES, LLP

7

8                                By_____

9                                  Stacy Monahan
                               Attorneys for California Physicians' Service

10                                  dba Blue Shield of California and Blue
                               Shield Life and Health Insurance

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

I.    STATEMENT OF FACTS AND PROCEDURAL HISTORY ....................... 3

II.   THE COMPLAINT FAILS TO STATE A CLAIM AGAINST BLUE
      SHIELD FOR "AIDING AND ABETTING" THEFT OR
      INSURANCE FRAUD ...................................................................................... 6

      A.    No Civil Cause of Action Exists Under *Cal. Penal Code* §§
            484(a) or 550(a)(6) ............................................................................... 6

      B.    Even If Civil Causes of Action Existed Under These Statutes,
            Blue Shield Cannot Be Liable for "Aiding and Abetting" Their
            Violation ................................................................................................ 9

III.  PLAINTIFF'S UNFAIR TRADE PRACTICES CLAIM LACKS
      MERIT ............................................................................................................. 11

      A.    Plaintiff Has No Claim for Relief Under Section 17000 ................... 11

      B.    Even If Plaintiff Intended to Plead Under Section 17200, the
            Complaint Still Fails To State A Claim ............................................. 12

IV.   ERISA PREEMPTS PLAINTIFF'S CLAIMS RELATED TO
      DEFENDANT CASTILLO ............................................................................. 13

      A.    Plaintiff Could Have Sought Relief for Denial of ERISA
            Benefits ............................................................................................... 13

      B.    The Unjust Enrichment Claim Conflicts With ERISA's Remedial
            Scheme ................................................................................................ 15

      C.    Plaintiff's Unjust Enrichment Claim "Relates to" His ERISA Plan
            and Is Therefore Preempted ............................................................... 16

CONCLUSION ....................................................................................................... 18

# TABLE OF AUTHORITIES

**Page**

## Cases

*Aetna Health Inc. v. Davila,*
  542 U.S. 200, 124 S. Ct. 2488 (2004) ................................................ 14

*Agricultural Insurance Co. v. Superior Court,*
  70 Cal. App. 4th 385, 82 Cal. Rptr. 2d 594 (1999) ............................ 7

*Amato v. Bernard,*
  618 F.2d 559 (9th Cir. 1980) ............................................................ 16

*Bast v. Prudential Ins. Co. of Am.,*
  150 F.3d 1003 (9th Cir. 1998) .......................................................... 16

*Bernardo v. Planned Parenthood Fed. of Am.,*
  104 Cal. App. 4th 322 ...................................................................... 12

*Casey v. U.S. Bank National Ass'n,*
  127 Cal. App. 4th 1138, 26 Cal.Rptr.3d 401 (2005) ...................... 9, 10

*Cel-Tech Comm'ns v. Los Angeles Cellular Tel. Co.,*
  20 Cal. 4th 163 (1999) ...................................................................... 12

*Churchill Village v. General Electric Co.,*
  169 F. Supp. 2d 1119 (N.D. Cal. 2000) ............................................ 12

*Cleghorn v. Blue Shield of Cal.,*
  408 F.3d 1222 (9th Cir. 2005) ...................................................... 15, 16

*Coffman v. Kennedy,*
  74 Cal. App. 3d 28 (1977) ................................................................ 10

*Conroy v. Aniskoft,*
  507 U.S. 511, 113 S. Ct. 1562, 123 L. Ed. 2d 229 (1993) ................ 8

*Crusader Ins. Co. v. Scottsdale Ins. Co.,*
  54 Cal. App. 4th 121, 62 Cal. Rptr. 2d 620 (1997) ........................ 6, 8

*Dunn-Edwards Corp. v. Bay Area Air Quality Management Dist.,*
  9 Cal. App. 4th 644, 11 Cal. Rptr. 2d 850 (1992) ............................ 8

*Elliot v. Fortis Benefits Ins. Co.,*
  337 F.3d 1138 (9th Cir. 2003) .......................................................... 17

*Fiol v. Doellstedt,*
  50 Cal. App. 4th 1318, 58 Cal. Rptr. 2d 308 (1996) ........................ 9

*Gregory v. Albertson's, Inc.,*
  104 Cal. App. 4th 845 (2002) ........................................................ 12, 13

*Hashimoto v. Clark,*
   264 B.R. 585 (D.Ariz. 2001) ............................................................. 10

*Hermann Hosp. v. MEBA Medical & Benefits Plan,*
   845 F.2d 1286 (5th Cir. 1988) ......................................................... 14

*In re Hoddinot,*
   12 Cal. 4th 992, 50 Cal. Rptr. 2d 706 (1996) ..................................... 8

*J.A. Jones Construction Co. v. Superior Court,*
   27 Cal. App. 4th 1568, 33 Cal. Rptr. 2d 206 (1994) ........................... 9

*Khoury v. Maly's of California, Inc.,*
   14 Cal. App. 4th 612, 17 Cal. Rptr. 2d 708 (1993) ........................... 12

*Manufacturers Life Ins. Co. v. Superior Court,*
   10 Cal. 4th 257, 41 Cal. Rptr. 2d 220 (1995) ..................................... 8

*Misic v. Building Services Employees Health and Welfare Trust,*
   789 F.2d 1374 ................................................................................... 14

*Moradi-Shalal v. Fireman's Fund Ins. Companies,*
   46 Cal. 3d 287, 250 Cal. Rptr. 116 (1988) ..................................... 6, 7

*People v. Banks,*
   147 Cal. App. 3d 360, 195 Cal. Rptr. 101 (1983) ............................. 10

*Pilot Life Ins. Co. v. Dedeaux,*
   481 U.S. 41 (1987) ...................................................................... 15, 17

*Plotkin v. Tanner's Vacuum's,*
   53 Cal. App. 3d 454, 125 Cal. Rptr. 697 (1975) ............................... 11

*Providence Health Plan v. McDowell,*
   385 F.3d 1168 (9th Cir. 2004) ......................................................... 17

*Resolution Trust Corp. v. Rowe,*
   W L 183512, *5 -6 (N.D.Cal. 1993) ................................................. 10

*Richardson v. Reliance Nat. Indem. Co.,*
   2000 WL. 284211 (N.D. Cal. March 9, 2000) ................................... 10

*Royal Globe Insurance Company v. Superior Court,*
   23  Cal. 3d 880, 153 Cal. Rptr. 842 (1979) ........................................ 6

*Saunders v. Superior Court,*
   27 Cal. App. 4th 832, 33 Cal. Rptr. 2d 438 (1994) ............................. 9

*Schaefer v. Williams,*
   15 Cal. App. 4th 1243, 19 Cal. Rptr. 2d 212 (1993) ........................... 6

## **Statutes**

29 U.S.C. § 1132(a)(1)(B) ................................................................ 2, 14, 15

1 | 29 U.S.C. § 1144(a) ................................................................................. 15

2 | *Cal. Bus. & Prof. Code* § 17000 ....................................................... 2, 4, 11

3 | *Cal. Bus. & Prof. Code* § 17001 ................................................................ 11

4 | *Cal. Bus. & Prof. Code* § 17200 ................................................................ 12

5 | *Cal. Evid. Code* § 669(a)(1) ....................................................................... 6

6 | *Cal. Code of Civil Procedure* § 1858 ......................................................... 8

7 | *Cal. Penal Code* § 484(a) ................................................. 4, 6, 7, 8, 9, 11

8 | *Cal. Penal Code* § 550 ................................................................... 6, 7, 9

9 | *Cal. Penal Code* § 550(a)(1) ....................................................................... 7

10 | *Cal. Penal Code* § 550(a)(6) ....................................................................... 7

11 | *Fed. R. Civ. P.* 12(b)(6) ............................................................................. 2

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MEMORANDUM OF POINTS AND AUTHORITIES

### Preliminary Statement

This lawsuit is essentially a collection action by plaintiff Richard B. Fox, M.D. ("plaintiff") for the alleged nonpayment of charges for health care services rendered by plaintiff to certain enrollees of defendants California Physicians' Service dba Blue Shield of California ("Blue Shield") and Blue Shield Life & Health Insurance Company ("Blue Shield Life") (Blue Shield and Blue Shield Life are sometimes collectively referred to as "Blue Shield"). Plaintiff alleges that he performed medical services on behalf of defendants Devin Good ("Good"), Sheila Sabatino ("Sabatino") and Reynaldo Castillo ("Castillo"), each of whom is alleged to be an enrollee of either a Blue Shield or Blue Shield Life health plan. He claims however that he was never paid for those services.

Plaintiff *never* alleges that Blue Shield failed to render payment for those services. In fact, he specifically admits that for each service he provided, Blue Shield either paid or attempted to pay for those services. His complaint is that Blue Shield did not pay him *directly* for those services, electing instead to indemnify its members. Specifically, plaintiff objects to the fact that if a Blue Shield/Blue Shield Life enrollee has medical services provided by a non-contracted provider (a health services provider that does not contract directly with Blue Shield), Blue Shield does not pay the non-contracted provider directly for those services. Blue Shield indemnifies its member.

Although plaintiff can cite to no authority that even suggests Blue Shield's alleged conduct is improper, he alleges that Blue Shield's payment to its members is wrong because it makes it more difficult for a provider (like plaintiff) to receive payment for his services. Here, plaintiff alleges that Blue Shield paid enrollees Good and Sabatino for his services but that Good and Sabatino failed to forward this payment to him. Likewise, he claims that Blue Shield tried to pay Castillo but that payment was returned due to an improper address, thus he never received payment.

1    Upon these purported facts, plaintiff now sues Blue Shield for "aiding and

2  abetting" grand theft and insurance fraud (by Blue Shield's members), "unjust

3  enrichment" and breach of the California's Unfair Trade Practices Act (*Cal.*

4  *Business & Prof. Code* §§ 17000 *et seq.*)  There is no merit to any of these claims.

5    Plaintiff's "aiding and abetting" grand theft and insurance fraud claims are

6  based on *California Penal Code* statutes that do not provide for a civil cause of

7  action.  Plaintiff cannot therefore base a claim upon them.  Moreover, even if he

8  could, plaintiff's claims would still lack merit because plaintiff cannot demonstrate

9  that Blue Shield "aided and abetted" their violation.  Simply put, plaintiff has not--

10 and cannot--allege that Blue Shield either knew its members would "steal" plaintiff's

11 fees or that Blue Shield itself engaged in tortious conduct.  Without such allegations,

12 he cannot plead a claim for "aiding and abetting."

13   Plaintiff's *Cal. Business & Prof. Code* §§ 17000 *et seq.* must be dismissed

14 because the statute simply does not apply to the facts as alleged.  Section 17000

15 claims relate only to "loss leader" selling practices and other such anti-competitive

16 acts which are not present here.  To the extent plaintiff really means to make a claim

17 under Section 17200, the Complaint fails as well.  Any claim under Section 17200

18 must be premised upon a violation of another statutory obligation.  None exists.

19 While plaintiff alleges that "[t]his practice has been outlawed by mandatory

20 assignment of benefits statutes in increasing numbers of states[,]" (Complaint at ¶

21 16) California is not such a state.  In fact, Blue Shield's alleged policy--a policy of

22 indemnifying its enrollees for medical service payments--is an accepted method of

23 providing insurance in California and has been for a very long time.

24   Finally, plaintiff's unjust enrichment claim and all other allegations related to

25 defendant Castillo are preempted by ERISA.  Plaintiff's only claim for relief is one

26 for benefits under 29 U.S.C. § 1132(a)(1)(B) and he failed to make such a claim.

27 His state law claims related to Castillo should therefore be dismissed.

28

1    Because the Complaint fails to state a valid claim and cannot be amended to

2  do so, it should be dismissed with prejudice.

3

4  I.    STATEMENT OF FACTS AND PROCEDURAL HISTORY

5

6        This action was originally filed by plaintiff Richard B. Fox, M.D. ("Fox") in

7  San Francisco Superior Court.  Complaint; Monahan Decl., Ex. A.  The Complaint

8  named as defendants Blue Shield of California Life & Health Insurance Company

9  ("Blue Shield Life"), an enrollee in one of its health plans, Devin Good ("Good"),

10  and enrollees in health plans underwritten or partly administered by California

11  Physicians' Service dba Blue Shield of California ("Blue Shield"), Sheila Sabatino

12  ("Sabatino") and Reynaldo Castillo.[1]  Blue Shield and Blue Shield of California

13  removed the action based on ERISA preemption.  Notice of Removal, Monahan

14  Decl., Ex. B.

15        The Complaint purports to state ten causes of action.  Only four of these

16  causes of action are directed at Blue Shield/Blue Shield Life:

17    • Cause of Action 7 for "unjust enrichment" against Blue Shield Life related to

18        plaintiff's treatment of defendant Castillo.   (Complaint at ¶¶ 77-86.)

19    • Cause of Action 8 for "aiding and abetting grand theft" related to plaintiff's

20        treatment of defendants Good and Sabatino.  (Complaint at ¶¶ 86-90.)

21    • Cause of Action 9 for "aiding and abetting insurance fraud" related to

22        plaintiff's treatment of defendants Good and Sabatino.  (Complaint at ¶¶ 91-

23        93.)

24

25

26  [1]   Although not named in the Complaint, Blue Shield joined in the removal of

27  this action because it is the real-party-in-interest to the majority of plaintiff's
   allegations erroneously directed to Blue Shield Life.

28

                                                                     Case No. CV 07-2502 (JCS)
                                                                          Notice of Motion and Motion to Dismiss

- Cause of Action 10 for "unfair trade practices" under *California Bus. and Prof. Code* §§ 17000 *et seq.* (Complaint at ¶¶ 94-96.)

The premise for each of the causes of action is the same. Namely, plaintiff alleges that he performed medical services for defendants Good, Castillo and Sabatino[2] (Complaint at ¶¶ 28, 40, 54, 65, 78) and that each was a Blue Shield enrollee (Complaint at ¶¶ 30, 56, 67, 80.) He further alleges that he asked defendants Good and Castillo to assign any benefits they might receive from Blue Shield for his services to him and they agreed. Complaint at ¶¶ 31, 43, 81 ("Dr. Fox further explained to Mr. Good that he would have to forward that Blue Shield payment to Dr. Fox when he received it. Mr. Good agreed to do so.") With respect to Sabatino, plaintiff does not claim an express assignment of Sabatino's Blue Shield benefits. Rather, he apparently alleges that he was entitled to that payment as a matter of law and that, because Sabatino did not forward that payment, Sabatino "stole" it from him. Complaint at ¶¶ 61, 73("When Mrs. Sabatino then failed to forward those proceeds . . . to Dr. Fox in good faith and fraudulently appropriated to herself those insurance proceeds which had been entrusted to her for payment to Dr. Fox, she was guilty of grand theft in violation of *California Penal Code* section 484(a).")

Plaintiff further alleges that Blue Shield either paid the allowed amount for each relevant claim[3] (Complaint at ¶¶ 32, 44, 57, 68) ("as a result of the claim submitted to Blue Shield on his behalf by Dr. Fox, Mr. Good was reimbursed by

---

[2]  Plaintiff further alleges he performed medical services for a Mr. Christopher Langdon, a Blue Shield member. Complaint at ¶¶ 19-20. He claims that Blue Shield paid Mr. Langdon for those services but that Mr. Langdon's estate (Mr. Langdon has subsequently died) failed to forwarded that payment to plaintiff as was required. Complaint at ¶¶ 24-26.

[3]  With respect to services rendered to the deceased Mr. Langdon, plaintiff alleges that "Blue Shield also paid some amount of the claim submitted[.]" Complaint at ¶24.

1   Blue Shield in the amount of $1,870.04") or that Blue Shield attempted to do so but

2   had its payment returned as "undeliverable." Complaint at ¶ 82. There is thus no

3   allegation that Blue Shield failed to perform its obligations to any of its enrollees.

4        Rather, the gravamen of plaintiff's claims against Blue Shield is more

5   complicated: Blue Shield, he alleges, has a policy of not directly paying health care

6   providers that provide services to enrollees unless those providers have a contract

7   directly with Blue Shield. Complaint at ¶ 11. Blue Shield maintains this policy

8   allegedly to compel providers to contract with it. Complaint at ¶¶ 12-18. If

9   providers fail to do so, they run the risk of failing to collect from Blue Shield's

10  members directly. Complaint at ¶¶ 12-15. This policy, plaintiff alleges, is improper

11  and Blue Shield has an obligation to honor the assignment of its enrollees' benefits

12  to plaintiff and other providers. (Complaint at Prayer for Relief ¶¶ 7, 8 (seeking to

13  "[e]njoin Blue Shield from . . . paying insurance proceeds . . . directly to the

14  subscriber if the provider declines to participate" and an order "[m]andat[ing] that

15  Blue Shield pay directly to Dr. Fox the benefits due[.]")

16       Because there is no merit to plaintiff's claims against Blue Shield, Blue Shield

17  now brings this motion to dismiss the Complaint.

18

19

20

21

22

23

24

25

26

27

28

II.  **THE COMPLAINT FAILS TO STATE A CLAIM AGAINST BLUE SHIELD FOR "AIDING AND ABETTING" THEFT OR INSURANCE FRAUD**

   A.  No Civil Cause of Action Exists Under *Cal. Penal Code §§ 484(a) or 550(a)(6)*

   The Complaint purports to state causes of action for "Grand Theft" pursuant to *Cal. Penal Code § 484(a)*[4] and "Tortious Insurance Fraud" pursuant to *Cal. Penal Code § 550(a)(6)*. *See* Complaint at ¶¶ 86-93 (Causes of Action Eight and Nine). Because no civil cause of action is provided by the aforementioned statutes, plaintiff cannot state a claim and these claims must be dismissed.

   It is well-settled that while the Legislature may create a cause of action by statute, it must do so by "clear and direct language." *Schaefer v. Williams*, 15 Cal.App.4th 1243, 1248, 19 Cal.Rptr.2d 212 (1993), *citing Moradi-Shalal v. Fireman's Fund Ins. Companies*, 46 Cal.3d 287, 294-295, 250 Cal.Rptr. 116 (1988). *See also Crusader Ins. Co. v. Scottsdale Ins. Co.*, 54 Cal.App.4th 121, 132-133, 62 Cal.Rptr.2d 620, (1997). Indeed, as noted by Chief Justice Bird of the California Supreme Court, the Legislature knows exactly how to create such a cause of action and when it chooses not to *expressly* do so it "is conclusive evidence of the legislative intent to preclude third party civil actions unless and until such actions are expressly authorized." *Royal Globe Insurance Company v. Superior Court*, 23

---

[4]   The Complaint further cites to *Cal. Evid. Code § 669(a)(1)* in support of this cause of action. *See, e.g.*, Complaint at ¶ 38 ("Mr. Good has committed a statutory tort as defined under California Evidence Code section 669."). *Cal. Evid. Code § 669(a)(1)* sets forth an evidentiary presumption that occurs when a person violates a "statute, ordinance or regulation of a public entity[.]" *Cal. Evid. Code § 669(a)(1)*. As such, it does not set forth a cause of action and Blue Shield is at a loss to understand its relevance to this action.

1  Cal.3d 880, 896-897, 153 Cal.Rptr. 842, 850 (1979) (dissenting opinion), majority
2  opinion overruled by *Moradi-Shalal*, 46 Cal.3d 287 at 304-305.

3      Neither *Cal. Penal Code* § 484(a) nor *Cal. Penal Code* § 550(a)(6) provide
4  for such a civil cause of action.  In fact, neither *criminal* statute provides that they
5  may be enforced by a civilian nor do they provide any civil remedies or penalties
6  that might even suggest that the Legislature intended to create a civil cause of
7  action.

8      With respect to plaintiff's claim under *Cal. Penal Code* § 550(a)(6),
9  *Agricultural Insurance Co. v. Superior Court*, 70 Cal.App.4th 385, 82 Cal.Rptr.2d
10  594 (1999), is on point.  In *Agricultural*, a plaintiff brought suit--in part--for civil
11  recovery for "reverse bad faith" insurance fraud under *Cal. Penal Code* § 550(a)(1).
12  The defendants demurred on the ground that this statute does not provide for a civil
13  cause of action.  The trial court agreed.

14      On a writ of mandate, the plaintiff argued to the Court of Appeal that "it must
15  be permitted to sue for 'reverse bad faith' because *Penal Code Section* 550
16  subdivision (a)(1) provides that it is a criminal offense" to engage in the conduct
17  complained of in the suit.  *Agricultural*, 70 Cal.App.4th at 399.  The Court of
18  Appeal rejected that argument.  It noted that "there is no indication that the
19  Legislature . . . intended to expose insured to suits for 'reverse bad faith[.]'"  *Id.*
20  Moreover, because "[t]here is no language creating a private right of action in Penal
21  Code section 550[,]" any intent to create such a right had to be "implicit" and the
22  court found no evidence of such an intent.  *Id.* at 399-400.  Accordingly, no such
23  right exists under *Cal. Penal Code* § 550 and plaintiff's claim under this statute must
24  be dismissed.

25      The California Court of Appeal's reasoning in the *Agricultural* opinion
26  applies to plaintiff's "grand theft" allegation as well.  Not only is there "no
27  indication" from the face of the statute (*Cal. Penal Code* § 484(a)) that a civil claim

28

1  may be brought under its terms, but Blue Shield is not aware of a single civil action

2  that has ever been brought under it.

3       Moreover, under accepted doctrine for construction of statutes, because *Cal.*

4  *Penal Code* § 484(a) fails to contain any provision of civil relief, none exists. *Cal.*

5  *Code of Civil Procedure* § 1858 states the "general rule" for construction of statutes

6  as follows: "In the construction of a statute ... the office of the Judge is simply to

7  ascertain and declare what is in terms or in substance contained therein, not to insert

8  what has been omitted, or to omit what has been inserted ...." *Cal. Code of Civil*

9  *Procedure* § 1858; *see also Manufacturers Life Ins. Co. v. Superior Court*, 10

10  Cal.4th 257, 274, 41 Cal.Rptr.2d 220 (1995) (citing § 1858 as one of the "[w]ell

11  established canons of statutory construction" and describing it as a "mandate").

12  Indeed, "Section 1858 is itself an expression of legislative intent regarding the

13  proper interpretation of the statutes enacted by the Legislature. Thus a court 'is not

14  authorized to insert qualifying provisions not included and may not rewrite the

15  statute to conform to an assumed intention which does not appear from its

16  language.'" *Crusader*, 54 Cal.App.4th at 133 -134, *citing In re Hoddinot*, 12 Cal.4th

17  992, 1002, 50 Cal.Rptr.2d 706 (1996) ("... [C]ourts are not at liberty to impute a

18  particular intention to the Legislature when nothing in the language of the statute

19  implies such an intention") and *Dunn-Edwards Corp. v. Bay Area Air Quality*

20  *Management Dist.*, 9 Cal.App.4th 644, 658, 11 Cal.Rptr.2d 850 (1992).[5]

21

22      [5]  Any argument that the legislative history must be evaluated prior to dismissing this claim is
misplaced. Indeed, the Court in *Agricultural* upheld the granting of a demurrer, the equivalent to a
motion to dismiss, apparently by simply reviewing the face of the statute. *Agricultural*, 70
23  Cal.App.4th at 399-400. Moreover, the California Court of Appeal has questioned whether it is
*ever* appropriate to evaluate legislative history in construing a statute: "There are those who
24  would say that even in looking at legislative history we were on shaky ground. (*E.g.*, *Conroy v.*
*Aniskoft*, 507 U.S. 511, ---, 113 S. Ct. 1562, 1567, 123 L. Ed. 2d 229 (1993) (conc. opn. Of
25  Scalia, J.) ["Legislative history [is] the equivalent of entering a crowded cocktail party and looking
over the heads of the guests for one's friends"]; Note, Why Learned Hand Would Never Consult
26  Legislative History Today (1992) 105 Harv. L. Rev. 1005, 1016-1017 [] [arguing that lobbyists
and legislators have gotten wise to the judiciary's use of legislative history and now try to shape it
27  (footnote continued)

28

1  Accordingly, because *Cal. Penal Code* § 484(a) does not expressly provide

2  for a cause of action or even imply that one might be intended, none exists and

3  plaintiff's Eighth Cause of Action must be dismissed.

4

5  **B.**    **Even If Civil Causes of Action Existed Under These Statutes, Blue**

6  **Shield Cannot Be Liable for "Aiding and Abetting" Their Violation**

7

8  Even if plaintiff could state a civil cause of action against Blue Shield for

9  violation of *Cal. Penal Code* §§ 484(a) and 550(a)(6), plaintiff has failed to plead a

10  claim against Blue Shield for "aiding and abetting" a violation of either statute.

11  California has adopted the common law rule for subjecting a defendant to liability

12  for aiding and abetting a tort, thus "'[l]iability may [only]... be imposed on one who

13  aids and abets the commission of an intentional tort if the person (a) knows the

14  other's conduct constitutes a breach of duty and gives substantial assistance or

15  encouragement to the other to so act or (b) gives substantial assistance to the other

16  in accomplishing a tortious result and the person's own conduct, separately

17  considered, constitutes a breach of duty to the third person.'" *Casey v. U.S. Bank*

18  *National Ass'n*, 127 Cal.App.4th 1138, 1144, 26 Cal.Rptr.3d 401, 405 (2005), *citing*

19  *Saunders v. Superior Court*, 27 Cal.App.4th 832, 846, 33 Cal.Rptr.2d 438 (1994);

20  Rest.2d Torts, § 876; *Fiol v. Doellstedt*, 50 Cal.App.4th 1318, 1325-1326, 58

21  Cal.Rptr.2d 308 (1996). Plaintiff cannot satisfy either element.

22  First, plaintiff has not and cannot plead that Blue Shield had knowledge that

23  its enrollees were engaged in either theft or insurance fraud. Indeed, plaintiff simply

24  alleges Blue Shield "knew of the likelihood that its subscribers would commit theft

25

26  'for results that could not have won majority support' and therefore any use of legislative history is
illegitimate].)" *J.A. Jones Construction Co. v. Superior Court*, 27 Cal.App.4th 1568, 1576-1577,

27  33 Cal.Rptr.2d 206 (1994). The *J.A. Jones* court further noted, quoting Oliver Wendell Holmes,
(footnote continued)

28

1  of the benefits entrusted to them[.]"  Complaint at § 89.  This is insufficient.  To

2  meet the knowledge prong for this tort, plaintiff must allege "*actual* knowledge of

3  the specific primary wrong the defendant substantially assisted[.]"  *Casey*, 26 Cal.

4  Rptr. 3d at 406 (emphasis added); *Hashimoto v. Clark*, 264 B.R. 585, 599 (D.Ariz.

5  2001), *citing Resolution Trust Corp. v. Rowe,* W L 183512, *5 -6 (N.D.Cal. 1993)

6  (Caulfield, J.) ("In the absence of any duty, proof of actual knowledge is required.")

7  Knowledge that the other defendants "might" engage in certain conduct is simply

8  not enough.

9      Similarly, plaintiff has not alleged that Blue Shield provided "substantial

10  assistance" in furtherance of the other defendants' purportedly illegal conduct.  To

11  do so, plaintiff must allege that Blue Shield's *own* conduct was tortious.  *See*

12  *Coffman v. Kennedy*, 74 Cal. App. 3d 28, 32 (1977) ("While a defendant may be

13  held liable in tort for actively aiding or encouraging a wrongdoer, it is essential that

14  the defendant's own conduct was tortious.") (citation omitted).  Plaintiff's allegations

15  fall far short of satisfying this requirement.[6]

16      Moreover, to satisfy the "substantial assistance" element of an aiding and

17  abetting claim, plaintiff must allege that Blue Shield was "an *active participant* in"

18  the tortious conduct, *Richardson v. Reliance Nat. Indem. Co.*, 2000 WL 284211, at

19  *11 (N.D. Cal. March 9, 2000) (emphasis added).  However, the Complaint is

20  devoid of any facts showing that Blue Shield was an "active participant" in the theft

21

22  _____
   that the court's job is "not [to] inquire what the legislature meant; we ask only what the statute
   means.'"  *Id, quoting* Holmes, Collected Legal Papers (1920), p. 207) (citations omitted).

23      [6]  Analyzed under California's criminal standard for "aiding and abetting," plaintiff similarly
   could not make a claim against Blue Shield for Penal Code violations.  It is well-settled that any

24  such claim requires a showing of "criminal intent."  *See People v. Banks*, 147 Cal.App.3d 360,
   366, 195 Cal.Rptr. 101, 105 (1983) ("that criminal intent is an element of aiding and abetting in

25  California.")  Because plaintiff can at best allege that Blue Shield's acts might "encourage"
   criminal behavior, he can not properly allege that plaintiff acted with the requisite intent to commit

26  a crime.  Indeed, plaintiff admits that, at worst, Blue Shield's "intent" is to encourage providers to
   join its plan.  Complaint at ¶ 13 ("Blue Shield's purpose in declining to honor assignments of

27  benefits . . . is to coerce those doctors to become contracting Blue Shield providers[.]"

28

1 | or insurance fraud alleged.  At most, plaintiff alleges that Blue Shield indemnified
2 | its members for services covered by its operative health care plans.  There is nothing
3 | nefarious in this.  Indemnity insurance companies have been doing so in California
4 | and other states for decades, if not centuries.  Blue Shield's performance of an
5 | activity in the normal course of business cannot form the basis of "substantial
6 | assistance" for an aiding and abetting claim.

7 |

8 | III.    <u>PLAINTIFF'S UNFAIR TRADE PRACTICES CLAIM LACKS MERIT</u>

9 |

10 |

11 |        A.    <u>Plaintiff Has No Claim for Relief Under Section 17000</u>

12 |

13 |        Plaintiff's claim for relief under *California Business & Professions Code* §§
14 | 17000 *et seq.* also lacks merit.  It is well-settled that this statute is designed
15 | primarily to "encourage competition and to safeguard the public against
16 | monopolies."  *Plotkin v. Tanner's Vacuum's*, 53 Cal.App.3d 454, 457-458, 125
17 | Cal.Rptr. 697, 699 (1975), *citing Bus. & Prof. Code* § 17001.  As such, the Unfair
18 | Practices Act "generally breaks down into two main parts:  prohibitions against
19 | 'below cost selling' (*Bus. & Prof. Code*, § 17043) and against 'locality
20 | discriminations' (*Bus. & Prof. Code* §§ 17031, 17040)."  *Id.*  This finding is
21 | confirmed by even a cursory review of Article 3 of the Act, "Offenses Against the
22 | Chapter."  *See Bus. & Prof. Code.* §§ 17040-17051 (same).

23 |        Because the alleged "unfair trade practice" here (refusing to directly pay a
24 | non-contracted provider) is neither for "below cost selling" or "locality
25 | discrimination," *California Business & Professions Code* §§ 17000 *et seq.* does not
26 | apply and plaintiff's claim should be dismissed.

27 |

28 |

1  **B.  Even If Plaintiff Intended to Plead Under Section 17200, the Complaint**

2  **Still Fails To State A Claim**

3

4  Although not plead, if plaintiff intended his Tenth Cause of Action as one for

5  violation of *Cal. Business & Professions Code* §§ 17200 *et seq.* he has still failed to

6  state a claim.[7]  Plaintiff has not and cannot allege that Blue Shield has violated any

7  other law and cannot therefore recover under Section 17200.

8  It cannot be disputed that the Section 17200 limits "unfair competition" to an

9  "unlawful, unfair or fraudulent business act or practice."  *Cal. Bus. & Prof. Code*

10  § 17200.  Moreover, it is well-settled that a practice is not "unlawful" unless it

11  violates a law that is enforceable in court.  *Khoury v. Maly's of Cal.*, 14 Cal.App.4th

12  612, 619 (1993).  And, it is not "unfair" unless it violates a "public policy . . .

13  'tethered' to specific constitutional, statutory or regulatory provisions."  *Gregory v.*

14  *Albertson's, Inc.*, 104 Cal.App.4th 845, 854 (2002).[8]  Indeed, a practice "cannot be

15  unfair under [Section 17200] if that practice is permitted by law."  *Churchill*

16  *Village v. General Electric Co.*, 169 F.Supp.2d 1119, 1130 (N.D. Cal. 2000)

17  (consumer rebate program not "unfair" when authorized by federal law).

18  The Complaint simply alleges that Blue Shield maintains a policy in which it

19  refuses to directly pay non-contracted providers for services rendered to its

20

21  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

   [7]  Plaintiff's failure to specifically identify the particular section of the "Unfair Practices Act"

22  his claim purportedly falls under or to describe how his claim violates that section with reasonable
   particularity is sufficient ground alone to dismiss this claim.  *Khoury v. Maly's of California, Inc.*,

23  14 Cal.App.4th 612, 618-619, 17 Cal.Rptr.2d 708, 712-713 (1993) ("Demurrer was properly
   sustained as to [Section 17200 claim] because the second amended complaint identifies no

24  particular section of the statutory scheme which was violated and fails to describe with any
   reasonable particularity the facts supporting violation.")

25  [8]  *Cel-Tech Comm'ns v. Los Angeles Cellular Tel. Co.*, 20 Cal.4th 163, 187 (1999)
   (anti-competitive conduct is not "unfair" unless it "threatens an incipient violation of an antitrust

26  law, or violates the policy or spirit of one of those laws. . . ."); *Bernardo v. Planned Parenthood*

27  *Fed. of Am.*, 104 Cal.App.4th 322, 353 ("*Cel-Tech* . . . may signal a narrower interpretation of the
   prohibition of unfair acts in all [Section 17200] claims.").

28

1  enrollees.  The only laws cited by plaintiff to support its claim are *Cal. Penal Code*

2  §§ 484(a) and 550(a)(1).  As set forth above, plaintiff cannot properly allege that

3  Blue Shield violated these *Cal. Penal Code* sections as an "aider and abettor."  He

4  therefore cannot allege a statutory violation to "tether" a Section 17200 claim.

5  *Gregory*, 104 Cal.App.4th at 854.  Any such claim must therefore be dismissed.

6

7  IV.  <u>ERISA PREEMPTS PLAINTIFF'S CLAIMS RELATED TO DEFENDANT</u>

8       <u>CASTILLO</u>

9

10         Plaintiff's seventh claim for relief alleges that Blue Shield was unjustly

11  enriched because its enrollee Castillo received services from plaintiff for which

12  Castillo was entitled to benefits from Blue Shield.  Because that benefits claim was

13  allegedly assigned to plaintiff by defendant Castillo, relates to Castillo's ERISA plan

14  and conflicts with ERISA's exclusive remedial scheme, it is completely preempted.[9]

15

16         A.  <u>Plaintiff Could Have Sought Relief for Denial of ERISA Benefits</u>

17

18         Plaintiff's unjust enrichment cause of action is for payment of services

19  rendered to defendant Castillo "between the dates of June 8 through June 15, 2005."

20  Complaint at ¶ 78.  Specifically, Plaintiff alleges that he performed medical services

21  for Castillo in the amount of $3,490 for which Blue Shield (as Castillo's insurer) was

22  responsible.  Complaint at ¶¶ 79-80.  Plaintiff further claims that he is entitled to

23  direct payment by Blue Shield because Castillo assigned his rights to benefits to

24  plaintiff.  Complaint at ¶ 81.

25

26  ───────────────

    [9]  To the extent that plaintiff's Tenth Cause of Action, violation of *Cal. Business &*

27  *Professions Code* §§ 17000 *et seq.* is related to benefits for defendant Castillo, that cause of action
    is preempted as well.

28

1    Here, there can be no doubt that defendant Castillo is an enrollee in an

2  ERISA plan. Castillo is an enrollee in Maxim Healthcare Services, an employee

3  welfare benefit plan within the meaning of the Employee Retirement Income

4  Security Act of 1974 ("ERISA"), 29 U.S.C. § 1002(1), underwritten and/or

5  administered by CareFirst Blue Cross Blue Shield of Maryland.

6    ERISA's remedial statute permits an ERISA plan participant – such as

7  Castillo – to bring a civil action "to recover benefits due to him under the terms of

8  his plan, to enforce his rights under the terms of the plan, or to clarify his rights to

9  future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

10  Section 1132(a)(1)(B) is "relatively straightforward." *Aetna Health Inc. v. Davila*,

11  542 U.S. 200, 124 S. Ct. 2488, 2496 (2004). "If a participant or beneficiary believes

12  that benefits promised to him under the terms of the plan are not provided, he can

13  bring suit seeking provision of those benefits." *Id.* It is further well-settled that

14  plaintiff--as Castillo's alleged assignee--has standing to bring an action under

15  ERISA to assert Castillo's benefits claim. *Misic v. Building Services Employees*

16  *Health and Welfare Trust*, 789 F.2d 1374, 1379 ("an assignee of beneficiaries

17  pursuant to assignments valid under ERISA, has standing to assert the claims of his

18  assignors.") *See also Hermann Hosp. v. MEBA Medical & Benefits Plan*, 845

19  F.2d 1286, 1290 n.13 (5th Cir. 1988) ("Allowing assignees of beneficiaries to sue

20  under § 1132(a) comports with the principle of subrogation generally applied in the

21  law.")

22    Here, plaintiff claims that Blue Shield wrongfully failed to provide

23  Castillo (and himself) benefits under the terms of Castillo's ERISA-regulated health

24  plan. He specifically alleges that Castillo received medical treatment from plaintiff

25  (Complaint at ¶ 78) and that those services were covered benefits under Castillo's

26  plan (Complaint at ¶¶ 79, 80, 82). He further claims that those benefits were

27  assigned to plaintiff, that he billed Blue Shield for those services and Blue Shield,

28  instead of making payment to plaintiff, attempted to pay Castillo directly.

1    Complaint at ¶¶ 80-82  That payment was, however, allegedly returned to Blue

2    Shield because it could not be delivered to Castillo.  Complaint at ¶ 82.  Irrespective

3    of the terminology used by plaintiff to describe this payment, his claim is for

4    Castillo's benefits and therefore could have and should have been brought pursuant

5    to 29 U.S.C. § 1132(a)(1)(B).

6

7        B.    The Unjust Enrichment Claim Conflicts With ERISA's Remedial

8              Scheme

9

10            "There are two strands to ERISA's powerful preemptive force."

11   *Cleghorn v. Blue Shield of Cal.*, 408 F.3d 1222, 1225 (9th Cir. 2005).  First, section

12   1144(a) expressly preempts all state laws "insofar as they may now or hereafter

13   relate to any employee benefit plan[,]" 29 U.S.C. § 1144(a), excepting only state

14   "law[s] . . . which regulate insurance. . . ." *Id.* § 1144(b)(2)(A).  *See Pilot Life Ins.*

15   *Co. v. Dedeaux*, 481 U.S. 41, 45 (1987).  Second, section 1132(a) contains "a

16   comprehensive scheme of civil remedies to enforce ERISA's provisions." *Cleghorn*,

17   408 F.3d at 1225.  A state cause of action that duplicates that remedial scheme

18   conflicts with ERISA's remedial scheme.  *Id.; Davila*, 124 S. Ct. at 2498 n.4.

19            Plaintiff's unjust enrichment claim is preempted on both grounds.  To

20   begin with, the claim conflicts with ERISA's remedial scheme.  "Ordinary principles

21   of conflict preemption [apply to a state law claim] if it provides a separate vehicle to

22   assert a claim for benefits outside of, or in addition to, ERISA's remedial scheme."

23   *Davila*, 124 S. Ct. at 2495.  Thus, a "state cause of action that would fall within the

24   scope of this scheme of remedies is preempted as conflicting with the intended

25   exclusivity of the ERISA remedial scheme. . . . " *Cleghorn*, 408 F.3d at 1225;

26   *Davila*, 124 S. Ct. at 2498 n.4.

27            In *Cleghorn*, the plaintiff alleged that his ERISA health plan violated

28   the California's Unfair Competition Law (the "UCL") by denying his (and a

1 proposed class's) claims for emergency benefits in alleged violation of a section of

2 the Knox-Keene Act, *Cal. Health & Safety Code* § 1371.4(c). *Cleghorn*,

3 408 F.3d at 1224. The district court dismissed the claim based on ERISA

4 preemption, and the Ninth Circuit affirmed, holding that the UCL's remedies of

5 "restitutionary relief, disgorgement of profits, injunctive and other equitable relief"

6 for a denial of ERISA plan benefits "conflicted with ERISA's exclusive enforcement

7 scheme and . . . the state-law claims were therefore preempted." *Id.* at 1226.

8          Like the *Cleghorn* UCL claim, plaintiff's unjust enrichment claim seeks

9 restitutionary relief in favor of plaintiff (Complaint at ¶ 86, Prayer for Relief at ¶ 7).

10 This claims conflicts with the remedial scheme of section 1132(a)(1)(B), under

11 which plaintiff could seek to recover the claimed benefits. Furthermore, unlike the

12 latter ERISA benefits claim, plaintiff's unjust enrichment claim does not require

13 proof of exhaustion of plan remedies (*see Amato v. Bernard*, 618 F.2d 559 (9th Cir.

14 1980)) and is not subject to *Firestone* abuse-of-discretion review. *See Davila*, 124

15 S. Ct. at 2496 (discussing <u>Firestone</u> review). Plaintiff's unjust enrichment claim

16 therefore conflicts directly with Congress's comprehensive enforcement scheme of

17 section 1132. Plaintiff's claim is therefore preempted.

18

19     C.    <u>Plaintiff's Unjust Enrichment Claim "Relates to" His ERISA Plan and</u>

20           <u>Is Therefore Preempted</u>

21

22          Plaintiff's unjust enrichment claim also "relates to" his ERISA plans

23 within the meaning of section 1144(a) of ERISA and is therefore preempted. A

24 state law claim "relates to" an ERISA plan if it "has a connection with or reference

25 to" such a plan. *Bast v. Prudential Ins. Co. of Am.*, 150 F.3d 1003, 1007 (9th Cir.

26 1998). A claim makes "a reference to" an ERISA plan if "the existence of the plan

27 is essential" to the claim, in the sense that adjudication of the claim would require

28 the court to "interpret[] the plan" or "dictate" the proper "distribution of benefits"

1    under the plan. *Providence Health Plan v. McDowell*, 385 F.3d 1168, 1172 (9th Cir.

2    2004). Likewise, a claim has a "connection with" an ERISA plan if it will have a

3    direct impact on "the relationship between the plan and a participant." *Id.*

4           Those standards are satisfied here. To establish his unjust enrichment

5    claim, plaintiff must prove that Blue Shield agreed to provide health benefits to

6    Castillo, that he performed services for Castillo that required Blue Shield to pay

7    benefits under the terms of Castillo's health plan and that Blue Shield improperly

8    failed to make those payment (albeit to plaintiff as Castillo's assignee). Thus, the

9    Court will be required to interpret the plan and dictate the proper distribution of

10   benefits to plaintiff (via Castillo). Plaintiff's claim also has a direct impact upon

11   plan participants, including plaintiff's entitlement to plan benefits. Accordingly, the

12   unjust enrichment claim both "refers" and is "connected" to the ERISA plans and is

13   preempted under section 1144(a).

14          The Supreme Court and the Ninth Circuit have repeatedly held that

15   state-law claims seeking to recover ERISA-plan benefits "relate to" the ERISA plan

16   because they duplicate and impair the objectives of ERISA's comprehensive

17   scheme. *See Pilot Life*, 481 U.S. at 54 (ERISA preempted state-law tortious bad

18   faith claim for alleged delay in processing claim for plan benefits); *Elliot v. Fortis*

19   *Benefits Ins. Co.*, 337 F.3d 1138, 1147 (9th Cir. 2003) (an action "which seeks non-

20   ERISA damages for what are essentially claim processing causes of action[] clearly

21   falls under the § 1132 preemption exemplified by *Pilot Life*.").

22          The Supreme Court reiterated these principles in 2004 in *Davila*, 124 S.

23   Ct. at 2502. There, two ERISA subscribers sued their health plans in Texas for

24   refusing to cover hospital expenses, including authorization for a multi-day hospital

25   stay, allegedly in violation of a Texas law that required health plans to use due care

26   in deciding coverage claims. *Id.* at 2492-93. After the health plans removed both

27   actions, the district courts dismissed based on ERISA preemption. The Supreme

28   Court affirmed. In its ruling, the Supreme Court expressly found that the plaintiffs'

1  claims were based upon denials of benefits promised under the terms of ERISA

2  plans. *Id.* at 2497. Because the plaintiffs were only entitled to payment under their

3  plans, they could have filed a section 1132(a)(1)(B) claim for the benefits. *Id.* at

4  2497. Thus, the alleged violation of the Texas law did not "arise independently of

5  ERISA or the plan terms." *Id.* If the administrator correctly denied coverage under

6  the terms of the plan, its failure to provide the benefit would result from the terms of

7  the plan, not from any lack of due care. *Id.* Since "interpretation of the terms of

8  [the] benefit plans forms an essential part of their [state law] claim," ERISA

9  preempts the law. *Id.* at 2498.

10      Here, plaintiff could have filed a claim for ERISA plan benefits. Since

11  plaintiff was "entitled to [health care] coverage only because of the terms of"

12  Castillo's ERISA plan (*Davila*, 124 S. Ct. at 2496), his derivative unjust enrichment

13  claim "relates to" Castillo's ERISA plan. Plaintiff's unjust enrichment claim is

14  therefore preempted.

<u>Conclusion</u>

16      For the foregoing reasons, plaintiff's Complaint should be dismissed in

17  its entirety without leave to amend.

19  DATED:  May 16, 2006          QUINN EMANUEL URQUHART OLIVER &
                                  HEDGES, LLP

    By ____/s/ Stacy Monahan_____
                                  Stacy Monahan
                                  Attorneys for Defendants
                                  California Physicians' Service
                                  dba Blue Shield of California and Blue
                                  Shield Health and Life Insurance