# EXHIBIT A

1  Richard B. Fox, M.D.
   Plaintiff, *Pro se*
2  P.O. Box 1876
   Los Gatos, CA 95031-1876
3  408-395-8024
   408-395-8024 (facsimile)

**CASE MANAGEMENT CONFERENCE SET**

**AUG 1 7 2007** ~9⁰⁰ AM

**DEPARTMENT 212**

ENDORSED
FILED
SAN FRANCISCO COUNTY
SUPERIOR COURT

2007 MAR 19  AM 11: 44

GORDON PARK - LI, CLERK

BY:_____ Deborah Steppe
         DEPUTY CLERK

4

5

6

7

8            **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9                    **COUNTY OF SAN FRANCISCO**

10

11  RICHARD B. FOX, M.D.                CASE NO. CGC-07-461464

12            PLAINTIFF                 VERIFIED COMPLAINT

13            vs.                       UNLIMITED CIVIL CASE

14  BLUE SHIELD OF CALIFORNIA LIFE &    CAL. PENAL CODE §§ 484, 550

15  HEALTH INSURANCE COMPANY, DEVIN     CAL. EVIDENCE CODE § 669

16  GOOD, SHEILA SABATINO, and

17  REYNALDO CASTILLO,

18            DEFENDANTS

19

20      Plaintiff, Richard B. Fox, M.D., alleges the following:

21          1.    Dr. Fox is and was at all relevant times a physician licensed in the State of

22  California to practice medicine by the Medical Board of California.  Dr. Fox practices Intensive Care

23  Medicine in Santa Clara County, California.

24          2.    Defendant Blue Shield Life & Health Insurance Company, hereinafter "Blue

25  Shield," is a corporation organized and existing under the laws of the State of California.  It has its

26  principal place of business at 50 Beale Street, in the city of San Francisco, in the State of California.

27          3.    Defendant Devin Good resides at 14391 Quito Road in the Town of Saratoga in

28  the State of California.

COMPLAINT-UNLIMITED CIVIL CASE, FOX V. BLUE SHIELD ET AL., PAGE 1

**Exhibit A**

1          4.      Defendant Sheila Sabatino resides at 1041 Foxchase Drive, #58, in the city of

2 San Jose, in the State of California.

3          5.      Defendant Reynaldo Castillo is last known to have lived in the city of San Bruno,

4 in the State of California.

5          6.      Jurisdiction and venue are appropriate in the Superior Court for the State of

6 California in the County of San Francisco, based on the residency of defendant Blue Shield.

7          7.      Blue Shield markets health insurance plans to consumers in California.  It

8 maintains a network of preferred providers, including doctors and hospitals, who agree to contract to

9 provide services to Blue Shield subscribers for compensation at discounted rates.  These doctors are

10 marketed by Blue Shield to its subscribers as preferred providers from whom those subscribers should

11 preferentially seek treatment.

12          8.      Dr. Fox is not contracted with Blue Shield as a preferred provider.

13          9.      Dr. Fox submits claims on behalf of his patients to their health insurance plans

14 because the process is complex and increasingly requires sophisticated billing software and electronic

15 claim submission that is not available for patients to submit their own claims.

16          10.      With one exception, the private health insurance plans all disburse the claim

17 payment directly to the doctor under an assignment of benefits to the provider, an assignment that is

18 actual or implied from the assignment to the hospital when the services are provided in the hospital.

19 This is industry practice.

20          11.      The only major exception to this industry practice is defendant Blue Shield,

21 which makes it a practice to disburse the claim benefits check directly to the subscriber, but only when

22 the doctor is not a contracting member of its provider network.  If the doctor is a contracted member of

23 Blue Shield's provider network then Blue Shield sends payment directly to the doctor.  Thus, Blue

24 Shield's practice is atypical in the industry.

25          12.      When Blue Shield sends the check directly to the subscriber, then the doctor has

26 to try to get the subscriber to forward that amount to the doctor, as in these cases.  This is, in Dr. Fox's

27 experience, usually unsuccessful unless legal action is threatened or taken.  In over fifteen years, Dr.

28 Fox has had only a few instances where a Blue Shield subscriber forwarded these benefits without

**Exhibit A**

1  special collection efforts or actions.

2  　　　　13.　　Blue Shield's purpose in declining to honor assignments of benefits submitted by

3  non-contracting doctors and sending those benefits checks directly to their subscribers is to coerce those

4  doctors to become contracting Blue Shield providers because of the difficulty the doctors have in

5  collecting those payments from those subscribers when Blue Shield sends the check directly to the

6  subscriber.

7  　　　　14.　　When the subscriber fails to forward those benefits to the provider doctor the

8  subscriber commits a) theft by fraudulent appropriation under California Penal Code section 484(a) and

9  b) insurance fraud under California Penal Code section 550 since they have no loss to support the claim

10  that was submitted.  Doctors who accept Blue Shield's preferred provider contract are protected from

11  the consequences of this type of theft and insurance fraud.  Blue Shield directly benefits in building its

12  network of preferred providers by the actual and threatened theft and insurance fraud of its subscribers

13  when it sends those benefits checks directly to those subscribers.

14  　　　　15.　　Thus, Blue Shield benefits by using the threat that its subscribers will commit

15  theft and insurance fraud as a means of coercing non-contracting doctors to accept its contract and its

16  discounted contract rates.  But for the theft and insurance fraud of its subscribers, this tactic for building

17  Blue Shield's network would have no practical effect.

18  　　　　16.　　This practice of refusing to honor assignments of benefits to non-contracting

19  physicians is a policy that has been promoted by the national Blue Cross/Blue Shield Association and

20  adopted by many of its state members for the purpose of coercing physicians into its provider networks.

21  This practice has been outlawed by mandatory assignment of benefits statutes in increasing numbers of

22  states.  Defendant Blue Shield is a member of the national Blue Cross/Blue Shield Association.

23  　　　　17.　　The intent to rely on the bad debt and insurance fraud of its subscribers to

24  coerce non-participating physicians into joining Blue Shield's provider network is exemplified by the

25  position taken by BlueCross BlueShield of Oklahoma in opposing a mandatory assignment of benefits

26  statute there, stating that:

27  　　　　"[P]ayments for services rendered by providers who do not contract with BCBSOK are sent
directly to our customers.  Thus, out-of-network providers face the inconvenience of attempting

28  　　　　to collect payment from the customer and the accompanying possibility of incurring bad debt."
Exhibit 1.

COMPLAINT-UNLIMITED CIVIL CASE, FOX V. BLUE SHIELD ET AL., PAGE 3

**Exhibit A**

18.    This policy of relying on and encouraging patients to default on their obligations to non-participating doctors as a means of building Blue Shield's provider network has been adopted at the national level by the Blue Cross Blue Shield Association (advantages of participating in the network include "little or no bad debt"). Exhibit 2.

19.    Dr. Fox provided medical care to Mr. Christopher Langdon at the Community Hospital of Los Gatos in the year 2002. Dr. Fox submitted a claim to Blue Shield on behalf of Mr. Langdon for those services. Mr. Langdon received payment from Blue Shield on that claim and forwarded that payment to Dr. Fox.

20.    Dr. Fox again treated Mr. Langdon at the Community Hospital of Los Gatos between the dates of September 9, 2003 through September 22, 2003. A description of the services provided and dates of service are attached as Exhibit 12. All of these services were provided at the Community Hospital of Los Gatos in Santa Clara County, California. Mr. Langdon was discharged from the Community Hospital of Los Gatos on October 7, 2003, terminally ill with emphysema.

21.    Since Mr. Langdon lived a few blocks from Dr. Fox, Dr. Fox paid an informal house call on Mr. Langdon to check up on him about a week after his discharge. Mr. Langdon lived alone and had no immediate family. Mr. Langdon was unable to use an important piece of respiratory equipment because of an electrical connection problem, a problem Dr. Fox fixed for him on that visit.

22.    Mr. Langdon passed away at home on or about October 20, 2003.

23.    The total billed charges for the services provided to Mr. Langdon at the Community Hospital of Los Gatos in September 2003 were $986. Dr. Fox submitted a claim on Mr. Langdon's behalf to his health insurance plan, defendant Blue Shield, in the amount of $986 on October 9, 2003. Exhibit 12.

24.    Because Blue Shield sent a benefits check in 2002 directly to Mr. Langdon based on the claim Dr. Fox submitted then, Dr. Fox presumes and alleges that Blue Shield also paid some amount of the claim submitted on October 9, 2003 to Mr. Langdon and that that payment was deposited to Mr. Langdon's account either by Mr. Langdon prior to his demise or by his estate subsequent to his demise.

25.    Neither Mr. Langdon nor his estate has ever paid any amount toward Mr.

1    Langdon's 2003 balance with Dr. Fox.

2         26.    When either Mr. Langdon or his estate endorsed the benefits check from Blue

3    Shield they adopted the claim submitted on Mr. Langdon's behalf by Dr. Fox as their own claim. When

4    Mr. Langdon or his estate then failed to forward those proceeds to Dr. Fox in good faith and

5    fraudulently appropriated to themselves those insurance proceeds which had been entrusted to them for

6    payment to Dr. Fox, they fraudulently appropriated property which had been entrusted to them in

7    violation of California Penal Code §484(a).

8

9                    FIRST CLAIM FOR RELIEF

10                        GRAND THEFT

11                    DEFENDANT DEVIN GOOD

12        (CAL. PENAL CODE § 484(a), CAL. EVID. CODE § 669(a)(1))

13        27.    Dr. Fox incorporates paragraphs 1-26 by reference.

14        28.    Dr. Fox provided emergency intensive medical care to Mr. Good between the

15    dates of July 16 through July 21, 2006, and other medical services from August 2 through August 3,

16    2006. A description of the services provided and dates of service are attached as Exhibit 3. All of these

17    services were provided at the Community Hospital of Los Gatos in Santa Clara County, California.

18        29.    The total billed charges for these services for Mr. Good were $3,346. Dr. Fox

19    submitted a claim on Mr. Good's behalf to his health insurance plan, defendant Blue Shield, in the

20    amount of $3,346. Exhibit 3.

21        30.    Mr. Good presented his Blue Shield insurance information to the Los Gatos

22    Community Hospital ("hospital") when he was admitted. This information was transcribed onto the

23    hospital's registration form, a copy of which is attached as Exhibit 5, and entered onto Mr. Good's

24    medical chart for use by Dr. Fox and others as needed.

25        31.    Dr. Fox explained to Mr. Good, while he was still in the hospital, that Dr. Fox

26    would submit a claim to Blue Shield, for Dr. Fox's services. Dr. Fox explained to Mr. Good that he is

27    not a contracted provider with Blue Shield but was called in to Mr. Good's case because of a life-

28    threatening emergency. Dr. Fox also explained to Mr. Good that Blue Shield makes it a practice to

**Exhibit A**

send its insurance payment to its subscriber when the provider is not contracted with Blue Shield. Dr. Fox further explained to Mr. Good that he would have to forward that Blue Shield payment to Dr. Fox when he received it. Mr. Good agreed to do so.

32.   As a result of the claim submitted to Blue Shield on his behalf by Dr. Fox, Mr. Good was reimbursed by Blue Shield in the amount of $1,870.04. Exhibit 4.

33.   However, Mr. Good did not forward his Blue Shield insurance payment to Dr. Fox. Mr. Good has never paid anything on his balance, even though Dr. Fox has billed Mr. Good for his services. Exhibit 3.

34.   Mr. Good's balance with Dr. Fox is $3,346.

35.   Mr. Good has never questioned whether Dr. Fox did indeed provide the services claimed or that they were medically necessary, nor has he disputed the amount billed for those services.

36.   When Mr. Good endorsed the benefits check from Blue Shield he adopted the claim submitted on his behalf by Dr. Fox as his own claim. When Mr. Good then failed to forward those proceeds, in the amount of $1,870.04, to Dr. Fox in good faith and fraudulently appropriated to himself those insurance proceeds which had been entrusted to him for payment to Dr. Fox, he was guilty of grand theft in violation of California Penal Code section 484(a).

37.   Mr. Good also violated California Penal Code section 484(a) by defrauding Dr. Fox of his labor in accepting medical treatment for which he had no intention of paying, even though he received insurance proceeds for that purpose.

38.   Because: (a) Mr. Good violated California Penal Code section 484(a), and (b) thereby proximately injured Dr. Fox in his property, and (c) the injury resulted from an occurrence of the nature which the statute, ordinance, or regulation was designed to prevent; and (d) Dr. Fox was one of the class of persons for whose protection the statute, ordinance, or regulation was adopted, Mr. Good has committed a statutory tort as defined under California Evidence Code section 669.

SECOND CLAIM FOR RELIEF

TORTIOUS INSURANCE FRAUD

DEFENDANT DEVIN GOOD

COMPLAINT-UNLIMITED CIVIL CASE, FOX V. BLUE SHIELD ET AL., PAGE 6

**Exhibit A**

(CAL. PENAL CODE § 550(a)(6), CAL. EVID. CODE § 669(a)(1))

39.   Dr. Fox incorporates paragraphs 1-38 by reference.

40.   Dr. Fox provided emergency intensive medical care to Mr. Good between the dates of July 16 through July 21, 2006, and other medical services from August 2 through August 3, 2006. A description of the services provided and dates of service are attached as Exhibit 3. All of these services were provided at the Community Hospital of Los Gatos in Santa Clara County, California.

41.   The total billed charges for these services for Mr. Good were $3,346. Dr. Fox submitted a claim on Mr. Good's behalf to his health insurance plan, defendant Blue Shield, in the amount of $3,346. Exhibit 3.

42.   Mr. Good presented his Blue Shield insurance information to the Los Gatos Community Hospital ("hospital") when he was admitted. This information was transcribed onto the hospital's registration form, a copy of which is attached as Exhibit 5, and entered onto Mr. Good's medical chart for use by Dr. Fox and others as needed.

43.   Dr. Fox explained to Mr. Good, while he was still in the hospital, that Dr. Fox would submit a claim to Blue Shield, for Dr. Fox's services. Dr. Fox explained to Mr. Good that he is not a contracted provider with Blue Shield but was called in to Mr. Good's case because of a life-threatening emergency. Dr. Fox also explained to Mr. Good that Blue Shield makes it a practice to send its insurance payment to its subscriber when the provider is not contracted with Blue Shield. Dr. Fox further explained to Mr. Good that he would have to forward that Blue Shield payment to Dr. Fox when he received it. Mr. Good agreed to do so.

44.   As a result of the claim submitted to Blue Shield on his behalf by Dr. Fox, Mr. Good was reimbursed by Blue Shield in the amount of $1,870.04. Exhibit 5.

45.   However, Mr. Good did not forward his Blue Shield insurance payment to Dr. Fox. Mr. Good has never paid anything on his balance, even though Dr. Fox has billed Mr. Good for his services. Exhibit 3.

46.   Mr. Good's balance with Dr. Fox is $3,346.

47.   Mr. Good has never questioned whether Dr. Fox did indeed provide the services claimed or that they were medically necessary, nor has he disputed the amount billed for those services.

**Exhibit A**

48.    Defendant Good knowingly caused a false or fraudulent claim to be submitted to Blue Shield on his behalf by Dr. Fox. This claim was false or fraudulent because Mr. Good suffered no loss since he never paid anything to Dr. Fox for the services encompassed by that claim. Blue Shield sent a check to Mr. Good in payment of that claim. Mr. Good kept those proceeds for his own benefit and never paid them to Dr. Fox for the services encompassed by that claim.

49.    When Mr. Good endorsed the benefits check from Blue Shield he adopted the claim submitted on his behalf by Dr. Fox as his own claim. When he then failed to forward those proceeds to Dr. Fox in good faith, he signaled his intention to abrogate his obligations to Dr. Fox and leave Dr. Fox with a bad debt. When Mr. Good adopted the claim as his own, deposited the proceeds that arose from that claim, and rejected the underlying obligation that gave rise to those proceeds, he committed insurance fraud under California Penal Code 550 since he accepted payment for a claim for which there was no underlying loss.

50.    Because: (a) Mr. Good violated California Penal Code section 550, and (b) thereby proximately injured Dr. Fox in his property, and (c) the injury resulted from an occurrence of the nature which the statute, ordinance, or regulation was designed to prevent; and (d) Dr. Fox was one of the class of persons for whose protection the statute, ordinance, or regulation was adopted, Mr. Good has committed a statutory tort as defined under California Evidence Code section 669.

### THIRD CLAIM FOR RELIEF

### UNJUST ENRICHMENT

### DEFENDANT DEVIN GOOD

### (COMMON LAW)

51.    Dr. Fox incorporates paragraphs 1-50 by reference.

52.    Defendant Good has been unjustly enriched by his receipt of $3,346 worth of life-saving emergency medical care for which he has paid nothing. Furthermore, he has been further enriched by his receipt of $1,870.04 from Blue Shield to which he is not entitled.

### FOURTH CLAIM FOR RELIEF

COMPLAINT-UNLIMITED CIVIL CASE, FOX V. BLUE SHIELD ET AL., PAGE 8

**Exhibit A**

GRAND THEFT

DEFENDANT SHEILA SABATINO

(CAL. PENAL CODE § 484(a), CAL. EVID. CODE § 669(a)(1))

53.    Dr. Fox incorporates paragraphs 1-52 by reference.

54.    Dr. Fox provided emergency medical care to Mrs. Sabatino between the dates of April 4 through April 8, 2005. A description of the services provided and dates of service are attached as Exhibit 6. All of these services were provided at the Community Hospital of Los Gatos in Santa Clara County, California.

55.    The total billed charges for these services for Mrs. Sabatino were $924.00. Dr. Fox submitted a claim on Mrs. Sabatino's behalf to her health insurance plan, defendant Blue Shield, in the amount of $924.00. Exhibit 6.

56.    Mrs. Sabatino presented her Blue Shield insurance information to the Los Gatos Community Hospital ("hospital") when she was admitted. This information was transcribed onto the hospital's registration form, a copy of which is attached as Exhibit 8, and entered onto Mrs. Sabatino's medical chart for use by Dr. Fox and others as needed.

57.    As a result of the claim submitted to Blue Shield on his behalf by Dr. Fox, Mrs. Sabatino was reimbursed by Blue Shield in the amount of $643.08. Exhibit 7.

58.    However, Mrs. Sabatino did not forward her Blue Shield insurance payment to Dr. Fox. Mrs. Sabatino has never paid anything on her balance, even though Dr. Fox has billed Mrs. Sabatino for his services. Exhibit 6.

59.    Mrs. Sabatino's balance with Dr. Fox is $924.00.

60.    Mrs. Sabatino has never questioned whether Dr. Fox did indeed provide the services claimed or that they were medically necessary, nor has she disputed the amount billed for those services.

61.    When Mrs. Sabatino endorsed the benefits check from Blue Shield she adopted the claim submitted on her behalf by Dr. Fox as her own claim. When Mrs. Sabatino then failed to forward those proceeds, in the amount of $643.08 to Dr. Fox in good faith and fraudulently appropriated to herself those insurance proceeds which had been entrusted to her for payment to Dr.

**Exhibit A**

1  Fox, she was guilty of grand theft in violation of California Penal Code section 484(a).

2        62.    Mrs. Sabatino also violated California Penal Code section 484(a) by defrauding

3  Dr. Fox of his labor in accepting medical treatment for which she had no intention of paying, even

4  though she received insurance proceeds for that purpose.

5        63.    Because: (a) Mrs. Sabatino violated California Penal Code section 484(a), and

6  (b) thereby proximately injured Dr. Fox in his property, and (c) the injury resulted from an occurrence

7  of the nature which the statute, ordinance, or regulation was designed to prevent; and (d) Dr. Fox was

8  one of the class of persons for whose protection the statute, ordinance, or regulation was adopted, Mrs.

9  Sabatino has committed a statutory tort as defined under California Evidence Code section 669.

10

11                                               FIFTH CLAIM FOR RELIEF

12                                           TORTIOUS INSURANCE FRAUD

13                                      DEFENDANT SHEILA SABATINO

14              (CAL. PENAL CODE § 550(a)(6), CAL. EVID. CODE § 669(a)(1))

15        64.    Dr. Fox incorporates paragraphs 1-63 by reference.

16        65.    Dr. Fox provided emergency medical care to Mrs. Sabatino between the dates of

17  April 4 through April 8, 2005. A description of the services provided and dates of service are attached

18  as Exhibit 6. All of these services were provided at the Community Hospital of Los Gatos in Santa

19  Clara County, California.

20        66.    The total billed charges for these services for Mrs. Sabatino were $924.00. Dr.

21  Fox submitted a claim on Mrs. Sabatino's behalf to her health insurance plan, defendant Blue Shield, in

22  the amount of $924.00. Exhibit 6.

23        67.    Mrs. Sabatino presented her Blue Shield insurance information to the Los Gatos

24  Community Hospital ("hospital") when she was admitted. This information was transcribed onto the

25  hospital's registration form, a copy of which is attached as Exhibit 8, and entered onto Mrs. Sabatino's

26  medical chart for use by Dr. Fox and others as needed.

27        68.    As a result of the claim submitted to Blue Shield on his behalf by Dr. Fox, Mrs.

28  Sabatino was reimbursed by Blue Shield in the amount of $643.08. Exhibit 7.

**Exhibit A**

1    69.    However, Mrs. Sabatino did not forward her Blue Shield insurance payment to

2    Dr. Fox. Mrs. Sabatino has never paid anything on her balance, even though Dr. Fox has billed Mrs.

3    Sabatino for his services. Exhibit 6.

4    70.    Mrs. Sabatino's balance with Dr. Fox is $924.00

5    71.    Mrs. Sabatino has never questioned whether Dr. Fox did indeed provide the

6    services claimed or that they were medically necessary, nor has she disputed the amount billed for those

7    services.

8    72.    Defendant Sabatino knowingly caused a false or fraudulent claim to be submitted

9    to Blue Shield on her behalf by Dr. Fox. This claim was false or fraudulent because Mrs. Sabatino

10    suffered no loss since she never paid anything to Dr. Fox for the services encompassed by that claim.

11    Blue Shield sent a check to Mrs. Sabatino in payment of that claim. Mrs. Sabatino kept those proceeds

12    for her own benefit and never paid them to Dr. Fox for the services encompassed by that claim.

13    73.    When Mrs. Sabatino endorsed the benefits check from Blue Shield she adopted

14    the claim submitted on her behalf by Dr. Fox as her own claim. When she then failed to forward those

15    proceeds to Dr. Fox in good faith, she signaled her intention to abrogate her obligations to Dr. Fox and

16    leave Dr. Fox with a bad debt. When Mrs. Sabatino adopted the claim as her own, deposited the

17    proceeds that arose from that claim, and rejected the underlying obligation that gave rise to those

18    proceeds, she committed insurance fraud under California Penal Code section 550 since she accepted

19    payment for a claim for which there was no underlying loss.

20    74.    Because: (a) Mrs. Sabatino violated California Penal Code section 550, and (b)

21    thereby proximately injured Dr. Fox in his property, and (c) the injury resulted from an occurrence of

22    the nature which the statute, ordinance, or regulation was designed to prevent; and (d) Dr. Fox was one

23    of the class of persons for whose protection the statute, ordinance, or regulation was adopted, Mrs.

24    Sabatino has committed a statutory tort as defined under the California Evidence Code section 669.

25

26    SIXTH CLAIM FOR RELIEF

27    UNJUST ENRICHMENT

28    DEFENDANT SHEILA SABATINO

COMPLAINT-UNLIMITED CIVIL CASE, FOX V. BLUE SHIELD ET AL., PAGE 11

**Exhibit A**

(COMMON LAW)

75.     Dr. Fox incorporates paragraphs 1-74 by reference.

76.     Defendant Sabatino has been unjustly enriched by her receipt of $924 worth of medical care for which she has paid nothing. Furthermore, she has been further enriched by her receipt of $643.08 from Blue Shield to which she is not entitled.

SEVENTH CLAIM FOR RELIEF

UNJUST ENRICHMENT

(COMMON LAW)

DEFENDANT REYNALDO CASTILLO

77.     Dr. Fox incorporates paragraphs 1-76 by reference.

78.     Dr. Fox provided emergency intensive medical care to Mr. Castillo between the dates of June 8 through June 15, 2005. A description of the services provided and dates of service are attached as Exhibit 9. All of these services were provided at the Community Hospital of Los Gatos in Santa Clara County, California.

79.     The total billed charges for these services for Mr. Castillo were $3,490. Dr. Fox submitted a claim on Mr. Castillo's behalf to his health insurance plan, defendant Blue Shield, in the amount of $3,490. Exhibit 9.

80.     Mr. Castillo presented his Blue Shield insurance information to the Los Gatos Community Hospital ("hospital") when he was admitted. This information was transcribed onto the hospital's registration form, a copy of which is attached as Exhibit 11, and entered onto Mr. Castillo's medical chart for use by Dr. Fox and others as needed.

81.     Dr. Fox explained to Mr. Castillo, while he was still in the hospital, that Dr. Fox would submit a claim to Blue Shield, for Dr. Fox's services. Dr. Fox explained to Mr. Castillo that he is not a contracted provider with Blue Shield but was called in to Mr. Castillo's case because of a life-threatening emergency. Dr. Fox also explained to Mr. Castillo that Blue Shield makes it a practice to send its insurance payment to its subscriber when the provider is not contracted with Blue Shield. Dr. Fox further explained to Mr. Castillo that he would have to forward that Blue Shield payment to Dr.

**Exhibit A**

Fox when he received it. Mr. Castillo agreed to do so.

82.    Blue Shield received the claim submitted on behalf of Mr. Castillo by Dr. Fox. Exhibit 10. Dr. Fox is informed that Blue Shield sent a benefits check to Mr. Castillo but that it was returned to Blue Shield as undeliverable.

83.    Mr. Castillo's balance with Dr. Fox is $3,490.

84.    Mr. Castillo has never questioned whether Dr. Fox did indeed provide the services claimed or that they were medically necessary, nor has he disputed the amount billed for those services.

85.    Defendant Castillo has been unjustly enriched by his receipt of $3,490 worth of life-saving emergency medical care for which he has paid nothing.

86.    Blue Shield has been unjustly enriched because they have not had to pay anything for the services rendered to their subscriber, Mr. Castillo, for which they are responsible.

## EIGHTH CLAIM FOR RELIEF

## AIDING AND ABETTING GRAND THEFT

## DEFENDANT BLUE SHIELD

## (CAL. PENAL CODE § 484(a), CAL. EVID. CODE § 669(a)(1))

86.    Dr. Fox incorporates paragraphs 1-85 by reference.

87.    Defendants Good and Sabatino knowingly committed grand thefts of Dr. Fox's property and services as alleged above.

88.    Patient Langdon or his estate fraudulently appropriated property which had been entrusted to him or it for payment to Dr. Fox, as alleged above.

89.    Defendant Blue Shield knowingly aided and abetted defendants Good and Sabatino in their grand thefts and patient Langdon or his estate in fraudulent appropriation by sending their claim payments directly to them instead of honoring the assignment of benefits to Dr. Fox. Blue Shield knowingly intended to promote, assist, and encourage defendants Good and Sabatino to commit grand theft and patient Langdon or his estate in fraudulent appropriation by sending the benefits of their claims directly to them. Blue Shield's purpose in doing so was to promote the development of its

**Exhibit A**

purpose in doing so was to promote the development of its preferred provider network by encouraging its subscribers to commit grand theft and/or fraudulent appropriation on non-participating providers such as Dr. Fox, attempting thereby to coerce Dr. Fox into participating in Blue Shield's preferred provider network by injuring Dr. Fox in his property.

90.    Blue Shield acted with malice because it hoped, expected, and knew of the likelihood that its subscribers would commit theft of the benefits entrusted to them for payment to Dr. Fox, intending thereby to injure Dr. Fox in his property.

## NINTH CLAIM FOR RELIEF
## AIDING AND ABETTING INSURANCE FRAUD
## DEFENDANT BLUE SHIELD
### (CAL. PENAL CODE § 550(a)(6), CAL. EVID. CODE § 669(a)(1))

91.    Dr. Fox incorporates paragraphs 1-90 by reference.

92.    Defendants Good and Sabatino knowingly caused false or fraudulent claims to be submitted to Blue Shield on their behalf by Dr. Fox.  These claims were false or fraudulent because these defendants suffered no loss since they never paid anything to Dr. Fox for the services encompassed by those claims.

93.    Defendant Blue Shield aided and abetted defendants Good and Sabatino in their insurance fraud by sending their claim payments directly to them instead of honoring the assignment of benefits to Dr. Fox.  Blue Shield knowingly intended to promote, assist, and encourage defendants Good and Sabatino to commit insurance fraud by sending the benefits of their claims directly to them in the expectation that they might not forward those payments to Dr. Fox, thereby injuring Dr. Fox in his property.  Blue Shield's intent and purpose in doing so was to promote the development of its preferred provider network by encouraging its subscribers to commit criminal insurance fraud and abrogate their obligations to non-participating providers such as Dr. Fox, attempting thereby to coerce Dr. Fox into participating in Blue Shield's preferred provider network by injuring Dr. Fox in his property.

## TENTH CLAIM FOR RELIEF

Exhibit A

UNFAIR TRADE PRACTICES

DEFENDANT BLUE SHIELD

CALIFORNIA BUSINESS & PROFESSIONS CODE § 17000 ET SEQ.

94.   Dr. Fox incorporates paragraphs 1-93 by reference.

95.   Blue Shield's practice of sending insurance payments directly to patients, but only if the provider is not one of their preferred providers, constitutes an unfair trade practice in violation of the Unfair Practices Act, California Business & Professions Code § 17000 et seq. because it intends to operate by encouraging its subscribers to commit grand theft in violation of California Penal Code section 484(a) and insurance fraud in violation of California Penal Code section 550. Its practice is also atypical in the industry, giving it an unfair advantage over its competitors who do not rely on theft and insurance fraud to build their networks.

96.   Blue Shield acted with malice because it hoped, expected, and knew of the likelihood that its subscribers would commit insurance fraud with the benefits entrusted to them for payment to Dr. Fox, intending thereby to injure Dr. Fox in his property.

**Prayer for Relief**

WHEREFORE, plaintiff prays that this Court:

1.   Award Dr. Fox general damages jointly and severally as against defendants Blue Shield and Good in the amount of $3,346;

2.   Award Dr. Fox general damages jointly and severally as against defendants Blue Shield and Sabatino in the amount of $643.08;

3.   Award Dr. Fox general damages as against defendant Castillo in the amount of $3,490;

4.   Award Dr. Fox general damages as against defendant Blue Shield in an amount to be shown at trial for aiding and abetting the fraudulent appropriation of Dr. Fox's property entrusted to Mr. Langdon or his estate in the Langdon claim;

5.   Award Dr. Fox exemplary damages as against Blue Shield for aiding and abetting insurance fraud in an amount appropriate to punish Blue Shield and deter others from engaging in similar misconduct;

**Exhibit A**

6.      Enjoin Blue Shield from continuing its unfair trade practice of discriminating between preferred providers and non-providers in paying insurance proceeds directly to those providers when they participate as preferred providers or directly to the subscriber if the provider declines to participate;

7.      Mandate that Blue Shield pay directly to Dr. Fox the benefits due under the Castillo claims;

8.      Award Dr. Fox the costs of suit herein incurred;

9.      Grant Dr. Fox such other and further relief as may be just and appropriate in the circumstances presented.

Date: March _18_, 2007

Richard B. Fox, M.D., plaintiff *pro se*

**Exhibit A**

**VERIFICATION**

I, Richard B. Fox, M.D., declare:

I am the Plaintiff named in the foregoing Verified Complaint. I have read the Complaint and know the contents thereof. The same is true of my own personal knowledge, except as to allegations made on information and belief, and as to those allegations I believe them to be true.

I declare under penalty of perjury that the foregoing is true and correct.

Executed at Los Gatos, California, this 18th day of March, 2007.

Richard B. Fox, M.D.

COMPLAINT-UNLIMITED CIVIL CASE, FOX V. BLUE SHIELD ET AL., PAGE 17

**Exhibit A**